ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO**<br><br>Recurrida<br><br>v.<br><br>**JUAN CARLOS GARCÍA PADILLA**<br><br>Recurrente | **KLRA202300361** | **Revisión Procedente de la Oficina de Ética Gubernamental**<br><br>Caso Núm.: 22-40<br><br>Sobre:<br><br>Violación al Inciso (d) del Artículo 43 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Núm. 1-2012, según enmendada. |

Panel integrado por su presidenta la jueza Domínguez Irizarry, la jueza Aldebol Mora y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2024.

Comparece Juan Carlos García Padilla, en adelante García Padilla o recurrente, solicitando que revisemos la *"Resolución"* notificada el 9 de mayo de 2023 por la Oficina de Ética Gubernamental, en adelante, OEG, la cual le impuso una multa de $7,500, por tres (3) infracciones al Artículo 4.3 de la Ley 1-2012, mejor conocida como la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, en adelante, LOOEG, 3 LPRA sec. 1857(b).

Por los fundamentos expuestos a continuación, *revocamos.*

**I.**

García Padilla es actualmente el alcalde del Municipio de Coamo. El recurrente indicó que durante el período atravesado por

---

[1] Véase Orden Administrativa OATA-2023131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la juez Monsita Rivera Marchand.

la pandemia del COVID-19, se le extendieron tres (3) contratos al señor Ángel Rafael Negrón Reyes, en adelante, Negrón Reyes o recurrido. Cabe destacar que Negrón Reyes es hijo de Zoraida Reyes Díaz, en adelante, Reyes Díaz, quien es servidora pública en dicho municipio desde el año 1985.[2] Desde el 7 de enero de 2013, Reyes Díaz labora como Ayudante Especial en la Oficina del Alcalde.

Los contratos en cuestión cubrieron los períodos comprendidos desde el 6 de mayo de 2020 al 30 de junio de 2020; del 1 de julio de 2020 al 31 de julio de 2020 y del 1 agosto de 2020 al 31 de diciembre del mismo año.[3] Los mismos establecían una jornada de seis (6) horas diarias durante cinco (5) días a la semana devengando un salario mensual de $974.00.[4] Los servicios relacionados con los primeros dos (2) contratos se pagaron con fondos identificados con el sufijo Covid-19; en cambio, los fondos destinados para el tercer (3) contrato se denominaron con el sufijo *COVID Relief Found.*[5] Estos contratos fueron realizados en respuesta a ciertas necesidades en el Municipio de Coamo, producto del COVID-19. La Cláusula Sexta en los tres (3) contratos disponía "[q]ue este contrato se realiza como consecuencia y a base a la Declaración de Emergencia suscrita por la Hon. Wanda Vázquez Garced".[6]

El 10 de noviembre de 2021, la OEG presentó la querella de epígrafe, donde le imputó a García Padilla haber violado el artículo 4.3 (d) de la Ley Orgánica de la OEG en tres (3) ocasiones *al no haber obtenido autorización previa para otorgar dichos contratos.*[7] Por su parte, García Padilla presentó su "*Contestación a Querella"* y levantó

---

[2] Apéndice del recurso, pág. 186.
[3] *Id.* págs. 45,108-109.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* pág. 110.

varias defensas.[8] A su vez, también presentó una *"Moción de Desestimación"*, donde alegó que el artículo 4.3 (d) no aplicaba a la contratación de Negrón Reyes.[9] Por su parte, la OEG presentó una *"Oposición a Moción de Desestimación"*.[10]

Trabada la controversia entre ambas partes, el 9 de febrero de 2022, el Oficial Examinador de la OEG ordenó a las partes a expresarse sobre la posibilidad de considerar la *"Moción de Desestimación"* como una solicitud de resolución sumaria.[11] García Padilla presentó el 23 de febrero de 2022, una *"Moción en Cumplimiento de Orden"*, y solicitó un término para realizar descubrimiento de prueba.[12] Además, indicó que el 24 de febrero del 2022, el Oficial Examinador concedió treinta (30) para llevar a cabo el descubrimiento de prueba.

Según surge de los hechos alegados en el recurso de revisión ante nos, durante el transcurso del término concedido, es decir, hasta el 23 de marzo de 2022, el recurrente llevó a cabo el descubrimiento de prueba, más no así la OEG. Expirado el término concedido, el 6 de abril de 2022, la OEG sometió a García Padilla un *"Primer Pliego de Interrogatorio, Requerimiento de Admisiones y Producción de Documentos"*.[13]

Luego de varios trámites procesales, el 8 de septiembre de 2022, la OEG presentó una *"Moción Solicitando Adjudicación Sumaria"*.[14] El 11 de octubre de 2022, García Padilla presentó una *"Moción en Oposición a Solicitud de Adjudicación Sumaria de la Oficina de Ética Gubernamental y Solicitud de Adjudicación Sumaria del Querellado"*.[15]

---

[8] Apéndice del recurso, pág. 114.
[9] *Id.* pág.118.
[10] *Id.* pág. 131.
[11] *Id.* pág. 258.
[12] *Id.* pág. 259.
[13] *Id.*
[14] *Id.* pág. 161.
[15] *Id.* pág. 190.

Posteriormente, el 24 de octubre de 2022, la OEG presentó *"Réplica a Moción en Oposición a Solicitud de Adjudicación Sumaria de la Oficina de Ética Gubernamental y Solicitud de Adjudicación Sumaria del Querellado"*.[16] El 3 de noviembre de 2022, el recurrente presentó una *"Breve Dúplica a 'Réplica a Moción en Oposición a Solicitud de Adjudicación Sumaria de la Oficina de Ética Gubernamental y Solicitud de Adjudicación Sumaria del Querellado'"*.[17] Finalmente, el 20 de abril de 2023, la Oficial Examinadora rindió su informe intitulado *"Informe de la Oficial Examinadora"*, el cual fue acogido en su totalidad por el Director de la OEG.[18]

Según se desprende de la *"Resolución"* de 8 de mayo de 2023, el Director de OEG determinó que García Padilla incurrió en tres (3) violaciones al inciso (d) del artículo 4.3 de la LOOEG, supra, y en consecuencia, *le impuso una multa administrativa de $7,500.00 por las tres (3) violaciones*.[19]

Inconforme con la *"Resolución"* emitida, el 26 de mayo de 2023, García Padilla presentó una *"Moción de Reconsideración"*.[20] Mediante *"Resolución en Reconsideración"*, el 12 de junio de 2023, el Director de la OEG sostuvo la resolución recurrida.[21]

Así las cosas, el recurrente acude ante este Foro arguyendo los siguientes señalamientos de error:

> **PRIMERO:** LA OEG COMETIÓ ERROR DE DERECHO AL APLICAR ARBITRARIAMENTE EL ART. 4.3 (d) DE LA LOOEG A LOS HECHOS DE ESTE CASO.
>
> **SEGUNDO**: LA OEG COMETIÓ ERROR DE DERECHO AL RESOLVER ARBITRARIAMENTE QUE LA CONTRATACIÓN EN ESTE CASO NO ESTABA COBIJADA POR ALGUNA DE LAS

---

[16] Apéndice del recurso, pág, 231.
[17] *Id*. pág. 245.
[18] *Id*. pág.  257.
[19] *Id*. pág. 278.
[20] *Id*. pág. 281.
[21] *Id*. pág. 309.

CIRCUNSTANCIAS EXCEPCIONALES QUE PERMITE EL ART. 4.3 (d) DE LA LOOEG.

**TERCERO**: LA OEG COMETIÓ ERROR DE DERECHO AL IMPONER UNA SANCIÓN DE $7,500 DE FORMA DE FORMA CAPRICHOSA Y ARBITRARIA.

El recurrido presentó su *"Alegato en Oposición a Revisión Judicial"* el 8 de agosto de 2023. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A. Revisión Judicial de las Agencias Administrativas

Sabido es que, en nuestro estado de derecho actual, las decisiones, órdenes y resoluciones finales de los organismos administrativos están sujetas a la revisión del Tribunal de Apelaciones. Artículo 4006 (c) de la Ley de la Judicatura de Puerto Rico, Ley Núm. 201-2003, 4LPRA sec. 24; Ley Núm. 38-2017Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, 3 LPRA secs. 9671 y 9672; Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B; *Miranda Corrada v. DDEC, et al.*, 211 DPR 738, 745 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018). El objetivo principal de la revisión judicial consiste en auscultar si la agencia administrativa actuó de conformidad a las facultades que fueron conferidas por ley. *Ruiz Matos v. Departamento de Corrección*, 2023 TSPR 144, 213 DPR ___ (2023); *Hernández Feliciano v. Municipio de Quebradillas*, 211 DPR 99,113-114 (2023); *Pérez López v. Dpto. Corrección*, 208 DPR 656, 672 (2022).

De ordinario, estas revisiones proceden al adjudicarse finalmente todas las controversias en consideración de la agencia y al agotarse todos los remedios administrativos disponibles para un litigante. *Miranda Corrada v. DDEC, et al.*, supra, pág. 746; *Pérez*

*López v. Dpto. Corrección,* supra; *Fonte Elizondo v. FR Conts.* 196 DPR 353, 358 (2016). Además, la facultad de cuestionar una determinación administrativa forma parte del debido proceso de ley, el cual es un derecho con rango constitucional. *ACT v. Prosol et als.,* 210 DPR 897, 908 (2022); *Asoc. Condomines v. Meadows Dev.,* 190 DPR 843, 847 (2014).

Empero, huelga decir que "la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo." *Hernández Feliciano v. Municipio de Quebradillas,* supra, págs 115-116; *Capó Cruz v. Jta. Planificación, et al.,* 204 DPR 581, 591 (2020). A tenor con ello, el foro apelativo debe hacer distinción entre los asuntos consistentes a la discreción o pericia de la agencia, y las controversias relacionadas a la interpretación estatutaria, en las cuales los tribunales son especialistas. *Hernández Feliciano v. Municipio de Quebradillas,* supra, pág. 116; *OCS v. Point Guard Ins.,* 205 DPR 1005, 1028 (2020).

De igual modo, el tribunal respetará las determinaciones de hechos que exponga la agencia, y no sustituirá el criterio de esta por el suyo. *Ruiz Matos v. Dpto. Corrección,* supra; *Otero v. Toyota,* 163 DPR 716, 727 (2005). En cuanto a las conclusiones de derecho, estas pueden ser revisadas en todos sus aspectos. No obstante, la referida revisión no implica que un tribunal tenga "la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia." *Otero v. Toyota,* supra, pág. 729. El foro judicial debe conceder deferencia a las decisiones de las agencias administrativas por razón de la experiencia y el conocimiento especializado que estas poseen sobre los asuntos que se les han delegado. *Hernández Feliciano v. Municipio de Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* supra, págs. 88-89; *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Cónsono con lo anterior, los dictámenes

administrativos están revestidos de una presunción de legalidad y corrección, la cual subsiste, mientras que la parte que los impugna no produzca suficiente evidencia para derrotarla. *Hernández Feliciano v. Municipio de Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, supra, pág. 89; *Rolón Martínez v. Supte. Policía*, supra, pág. 35.

Con relación a la deferencia, la determinación administrativa no será mantenida por los tribunales cuando: a) no esté basada en evidencia sustancial; ***b) el ente administrativo haya errado al aplicar o interpretar las leyes o los reglamentos que se le han encomendado administrar;*** c) el organismo administrativo haya actuado de forma arbitraria, irrazonable, ilegal o cometido abuso de discreción, realizando determinaciones carentes de una base racional; o d) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. *Ruiz Matos v. Dpto. Corrección*, supra; *Hernández Feliciano v. Municipio de Quebradillas*, supra, pág. 114*; Torres Rivera* v. *Policía de Puerto Rico,* 196 DPR 606, 628 (2016). (Énfasis suplido).

Los tribunales, para lograr su encomienda, deberán evaluar los siguientes tres (3) aspectos: 1) si el remedio concedido fue el apropiado; 2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y 3) ***si se sostienen las conclusiones de derecho realizadas por la agencia***. *Ruiz Matos v. Dpto. Corrección*, supra; *Hernández Feliciano v. Municipio de Quebradillas*, supra, pág. 115; *OEG* v. *Martínez Giraud*, supra, pág. 89; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840 (2021); *Capó Cruz v. Jta. Planificación et al.*, supra, pág. 591; *Torres Rivera v. Policía de Puerto Rico,* supra, págs. 626-627.

### B. Oficina de Ética Gubernamental

La LOOEG, supra, fue aprobada con el propósito principal de renovar y reafirmar la función preventiva y fiscalizadora de la OEG. Exposición de Motivos de la LOOEG. La precitada ley es el cuerpo normativo de la conducta de los servidores y exservidores públicos de la Rama Ejecutiva. Id. También, adoptó un Código de Ética "que reglamenta la conducta de los servidores y exservidores públicos de la Rama Ejecutiva, y que constituye un principio cardinal de esta legislación para proscribir las acciones improcedentes que ponen en riesgo la estabilidad del soporte moral del Estado". *OEG* v. *Martínez Giraud*, supra, pág. 91.

En cumplimiento con su Ley Habilitadora, y como parte de su misión, la OEG tiene la encomienda de fiscalizar la conducta de los servidores públicos, además de penalizar a los que transgreden los valores del servicio público, mediante los mecanismos y recursos que le provee la Ley. LOOEG, supra, sec. 1855. La LOOEG, supra, tiene como propósito establecer un servicio público íntegro, con valores, que mantenga la confianza en sus instituciones y asegure la transparencia en las funciones públicos. *OEG* v. *Martínez Giraud*, supra, pág. 91; *OEG v. Rodríguez y otros*, 159 DPR 98, 122 (2003). También, busca educar e impulsar en el servicio público los valores de bondad, confiabilidad, justicia, responsabilidad y respeto que rigen la administración pública. Id.

De las definiciones que el cuerpo normativo en cuestión incluye en su Artículo 1.2, cabe destacar las siguientes:

> **(h) Autoridad nominadora** — aquel o aquellos cuya función inherente es la de nombrar, ascender, remunerar o *contratar*.
>
> **(ñ) Contrato** — convenio o negocio jurídico para hacer o dejar de hacer determinado acto, otorgado con el consentimiento de las partes contratantes, relacionado con un objeto cierto y por virtud de la causa que se establezca. Incluye, pero sin limitarse, los acuerdos de bienes, de obras, de servicios y las órdenes de compra y de servicios.

**(w) Nombrar** — designación oficial de cualquier naturaleza para realizar determinadas funciones.

**(y) Pariente** — los abuelos, los padres, *los hijos*, los nietos, los tíos, los hermanos, los sobrinos, los primos hermanos, el cónyuge, los suegros y los cuñados del servidor público, así como los hijos y los nietos de su cónyuge.

**(gg) Servidor público** — persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública.

Por entenderlo pertinente al caso de marras, a continuación, exponemos un análisis jurídico sobre los criterios del Artículo 4.3(d) de la LOOEG, supra, a fin de entender el alcance de este. Al ser promulgada, la LOOEG derogó la Ley Núm. 12 de 24 de Julio de 1985, mejor conocida como la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico de 1985, en adelante, Ley 12 del 1985, 3 LPRA sec. 1801 et seq. El Artículo 3.3(d) de la precitada ley, fue sustituido por el actual Artículo 4.3(d) de la LOOEG, supra. El texto del artículo, aprobado originalmente en la Ley 12 del 1985, supra, disponía de la siguiente manera:

D. Ninguna agencia ejecutiva podrá llevar a cabo un contrato en el que cualquiera de sus funcionarios o empleados o algún miembro de las unidades familiares de estos, tenga directa o indirectamente, interés pecuniario, a menos que el Gobernador, previa recomendación del Secretario de Hacienda y del Secretario de Justicia lo autorice.

Posteriormente, se presentó un proyecto legislativo para enmendar, entre otros, el precitado artículo. Proyecto del Senado 50, en adelante, P. de la S. 50, el 8 de febrero de 1993, 12ma Asamblea Legislativa, 1era Sesión Ordinaria. El P. de la S. 50 originalmente propuso que se enmendara el Artículo 3.3(d) de la Ley 12 del 1985 al siguiente texto:

(d) Ninguna agencia ejecutiva podrá llevar a cabo un contrato en el que cualquiera de sus funcionarios o empleados o algún miembro de las unidades familiares de estos, tenga *o haya tenido durante los últimos cinco (5) años antes de ocupar su cargo*, directa o indirectamente, interés pecuniario, a menos que el Gobernador, previa recomendación del Secretario de Hacienda y del Secretario de Justicia, lo autorice.

El Informe de la Comisión de Ética Gubernamental, para el Senado de Puerto Rico, del 23 de junio de 1993, en adelante, Informe del Senado (1993), expresa con relación a la enmienda del Artículo 3.3, que la misma tiene el propósito de "ampliar el alcance de las prohibiciones relativas a la contratación para evitar todo posible conflicto y hasta la apariencia de conflictos que le restan al pueblo la confianza en su gobierno y en sus funcionarios públicos". Informe del Senado (1993), pág. 20.

Por otro lado, el Informe de la Comisión de Gobierno, para la Cámara de Representantes, del 25 de junio de 1994, en adelante, Informe de la Comisión (1994), propuso la aprobación del proyecto, con ciertas enmiendas. De los citados informes surgen varias ponencias, entre ellas una de la OEG y otras del Departamento de Justicia.

El 17 de febrero de 1993, la OEG sometió sus comentarios referentes a la P. de la S. 50, y con relación al Artículo 3.3(d) de la Ley 12 del 1985, supra, y el periodo de cinco (5) años. La agencia realizó una comparación con el término aplicable de dos (2) años a ciertas restricciones impuestas a los exservidores públicos del Gobierno Federal (18 USC 207).[22] En su análisis, opinó que el término de cinco (5) años propuesto era excesivo.

Por su parte, el 2 de marzo de 1993, el Departamento de Justicia sometió sus comentarios sobre la P. de la S. 50, en donde amplía sobre los cometarios de la OEG. La referida agencia recurre

---

[22] Véase la ponencia del Director Ejecutivo de la OEG del 17 de febrero de 1993 sobre la P. de la S. 50, pág. 3.

a un análisis más detallado sobre la Oficina de Ética Gubernamental en el ámbito federal (5 USC sec. 101). Explica la misiva que, bajo esta autoridad, se creó un código de conducta ética para empleados en la rama ejecutiva del gobierno federal, con principios análogos al de nuestro gobierno, incluyendo la prohibición sobre los empleados públicos y sus parientes de tener intereses pecuniarios en conflicto con su servicio. (5 USC sec. 401). Más aun, añade el Departamento de Justicia que el término dispuesto para medir los posibles conflictos pecuniarios de estos últimos previo a ocupar sus puestos, es de un año. En sus comentarios y sugerencias, resolvió el Departamento de Justicia que "a diferencia de los cinco años propuestos, el término de dos años es uno adecuado" y que un tiempo mayor puede "convertirse en un obstáculo para el reclutamiento de los funcionarios más idóneos y capacitados para el servicio público".[23]

Nuevamente, el 9 de mayo de 1994, el Departamento de Justicia presentó sus comentarios respecto a las enmiendas propuestas por la P. de la S. 50, relativas a los cinco (5) años del Artículo 3.3(d) de la Ley 12 del 1985, supra. En su comentario número dos (2), la agencia hace una ilustrativa observación. Sugiere que el término se reduzca a dos (2) años, por entender que este es más razonable, a fines de "evitar situaciones conflictivas por razón de *relaciones anteriores* que pudieran afectar la independencia de criterio e imparcialidad necesaria para ofrecer los servicios profesionales a una agencia ejecutiva".[24]

Así las cosas, el Informe de la Comisión (1994), en su "Análisis del Articulado", no acogió las propuestas de un término de dos (2) años para el Artículo 3.3(d) de la Ley 12 del 1985, supra. Sin

---

[23] Véase la ponencia del Secretario de Justicia del 2 de marzo de 1993 sobre la P. de la S. 50, pág. 8.
[24] Véase la ponencia del Secretario de Justicia del 9 de mayo de 1994 sobre la P. de la S. 50, pág. 13.

embargo, determinó *que cuatro (4) años es un término intermedio.* Informe de la Comisión (1994), pág. 11.

Después de estos esfuerzos legislativos, en torno al P. de la S. 50, el mismo se convirtió en la *Ley 150-1994*. En el texto final del referido estatuto, la enmienda al Artículo 3.3(d) de la Ley 12 del 1985, supra, rezaba de la siguiente manera:

> (d) Ninguna agencia ejecutiva podrá llevar a cabo un contrato en el que cualquiera de sus funcionarios o empleados o algún miembro de las unidades familiares de estos tenga *o haya tenido durante los últimos cinco (4) años antes de ocupar su cargo*, directa o indirectamente, interés pecuniario, a menos que el Gobernador, previa recomendación del Secretario de Hacienda y del Secretario de Justicia, lo autorice.

Más adelante, se presentó el Proyecto del Senado 2046, en adelante, P. de la S. 2046, el 24 de marzo de 2011, 16ta Asamblea Legislativa, 5ta Sesión Ordinaria. Por ello, la Ley 12 del 1985, supra, *fue abrogada* a posteriori. El Artículo 3.3(d) de la Ley 12 del 1985 fue sustituido por el *Artículo 4.3(d)* del P. del S. 2046. En lo pertinente a lo que hoy atendemos, los cambios propuestos a este inciso no fueron significativos. Sin embargo, sí lo fueron las enmiendas del Informe de la Comisión de Gobierno, para el Senado de Puerto Rico, del 6 de diciembre de 2011, en adelante, Informe del Senado (2011). En su entirillado, el Informe del Senado (2011) propuso que el Artículo 4.3(d) dispusiera *un término de dos (2) años en lugar de cuatro (4).* La misma fue acogida, y el P. del S. 2046 se convirtió en la LOOEG. Por todo lo cual, en su *texto final*, la LOOEG, supra, dispone lo siguiente con relación al Artículo 4.3(d):

> [...]
> (d) La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, **un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento.** Esta prohibición no aplica cuando, a

discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último.

[...]

LOOEG, supra, sec. 1857b (Énfasis suplido).

### C. Facultad de la OEG para imponer multas

El Artículo 3.4 de la LOOEG, supra, faculta a la OEG para imponer sanciones de naturaleza administrativa, civil y penal. 3 LPRA sec. 1828. Aunque la LPAUG, supra, establece que las agencias podrán imponer multas que no excederán los cinco mil dólares ($5,000) por cada violación a las leyes que estas administran, si la ley especial de que se trate dispone una penalidad administrativa mayor a la que se establece en esta sección, la agencia podrá imponer la penalidad mayor. 3 LPRA sec. 2201.

Precisamente, la LOOEG faculta a la OEG a imponer multas, que exceden el límite establecido en ciertos casos. Con relación a las sanciones por acciones de naturaleza administrativa, el Artículo 4.7(c) de la referida ley, establece lo siguiente:

> (c) Acciones de Naturaleza Administrativa (1) Toda persona que viole las prohibiciones y disposiciones establecidas en esta Ley y en los reglamentos, órdenes y normas promulgadas a su amparo, podrá ser sancionada por el Director con ***multa administrativa que no excederá de veinte mil (20,000) dólares por cada violación. Lo anterior no limita la facultad de la Oficina de Ética Gubernamental de imponer, además de dicha multa administrativa, la sanción de triple daño, según lo autoriza el inciso (b) de este Artículo.***

LOOEG, supra, sec. 1857f (c). (Énfasis suplido).

Además, a partir del año 2022, el Máximo Foro aclaró la norma de que "para imponer sanciones disciplinarias, un despido

de empleo o una multa sustancial, *el estándar de prueba es uno intermedio de prueba clara, robusta y convincente*, que, a su vez, supere y descarte todos los planteamientos basados en conjeturas". *OEG v. Martínez Giraud*, supra, págs. 83-84. (Énfasis suplido).

**III.**

García Padilla recurre ante nos, impugnando la multa fijada por la OEG, en su contra. En síntesis, argumenta que la OEG incidió en su aplicación del Artículo 4.3 (d) de LOOEG, supra, a los hechos del caso de autos. *Este Tribunal entiende que al recurrente le asiste razón.*

Sabido es que a las agencias administrativas le merecen gran deferencia por parte de los foros judiciales. No obstante, según la normativa esbozada anteriormente, este Tribunal puede ejercer su función revisora cuando entienda que la agencia recurrida se equivocó en derecho. *Ruiz Matos v. Dpto. Corrección*, supra; *Hernández Feliciano v. Municipio de Quebradillas*, supra, pág. 114*; Torres Rivera* v. *Policía de Puerto Rico,* supra, pág. 628.

Las multas emitidas por la OEG en el caso de marras se amparan en el Artículo 4.3(d) de la LOOEG. Esta disposición expone una serie de criterios que deben ser considerados, al momento de determinar si se violó el mismo con la celebración de algún contrato. Es necesario que la *autoridad nominadora* infractora haya participado en un contrato, en el que: 1) algún servidor público de la agencia, o algún miembro de su unidad familiar, *pariente*, socio o persona que conviva con este, 2) tenga o haya tenido, directa o indirectamente 3) un *interés pecuniario*, 4) *durante los últimos dos (2) años anteriores a su nombramiento.*

En este caso, la autoridad nominadora es el recurrente, quien actualmente es el Alcalde del Municipio de Coamo. Bajo su mando, labora Reyes Díaz, quien es la madre de la persona con la que

contrató García Padilla, Negrón Reyes. Según definido en la LOOEG, la relación entre Reyes Díaz y Negrón Reyes esta contemplada en los requisitos del inciso en cuestión, pues son parientes. No obstante, la OEG debió presentar prueba que evidenciara ***el interés pecuniario, durante los últimos dos (2) años al nombramiento.***

Según las definiciones del Artículo 1.2 de la LOOEG, supra, sec. 1854, tanto la designación de Reyes Díaz, en funciones de Ayudante Especial, así como Negrón Reyes, como contratista independiente, pueden ser los sujetos cuyo interés pecuniario se debe evaluar, a la luz del Artículo 4.3(d). Esto es así, ya que el acto de "nombrar" está definido en el precitado artículo como la "designación oficial ***de cualquier naturaleza*** para realizar determinadas funciones". Id. (Énfasis suplido).

Sin embargo, en nuestra apreciación del expediente propio y los documentos que obran en autos, concluimos que la OEG no probó los elementos del artículo en cuestión. Entendemos que, más allá de señalar la relación de parentesco, la agencia recurrida debió pasar prueba sobre el interés pecuniario durante los dos (2) años anteriores al otorgamiento de los contratos.

Es importante subrayar que en el Informe recogido por la OEG, la Oficial Examinadora destaca que la prohibición establecida en el inciso (d) del Artículo 3.3 de la LOOEG, supra, va dirigida a la autoridad nominadora, y contiene varias modalidades, entre ellas una prohibición de contratación en el que el pariente de un servidor público tenga o haya tenido, directa o indirectamente, *un interés pecuniario.*[25] Sin embargo, esa última modalidad incluye *"durante los últimos dos (2) años anteriores a su nombramiento"*. Sobre esta última modalidad, la OEG no presentó evidencia *clara, robusta y convincente,* como lo requiere la norma jurisprudencial

---

[25] Apéndice del recurso, pág. 267.

recientemente esbozada. De hecho, no presentó ninguna prueba al efecto.

Resaltamos que un detenido análisis de los historiales legislativos de las leyes que han creado y enmendado el actual Artículo 4.3(d) de la LOOEG denota la diáfana intención de evitar conflictos de intereses pecuniarios entre empleados públicos, sus parientes, socios, unidad familiar, entre otros, con terceros o pasadas relaciones con terceros. Sin embargo, el artículo que aquí nos ocupa, requiere que la OEG evalúe qué posibles relaciones, dos (2) años antes al nombramiento del empleado o su pariente, puede representar un interés pecuniario para este.

No habiéndose probado los elementos del Artículo 4.3(d) de la LOOEG, justipreciamos que la falta administrativa no se cometió, por lo que nos vemos obligados a dejar sin efecto la misma.

**IV.**

Por los fundamentos que anteceden, *revocamos la "Resolución" recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones